IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRETT MYERS, )
)
        Plaintiff, )
)
v. ) 1:17CV406
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Brett Myers ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on May 28, 2014, alleging a disability onset date of January 1, 2012 in both applications, later amended to June 5, 2014. (Tr. at 16, 214-23.)[1] His applications were denied initially (Tr. at 85-104) and upon reconsideration (Tr. at 105-26).

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 156-58.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on October 14, 2016. (Tr. at 16.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through October 31, 2016, the date of the administrative decision. (Tr. at 24.) On March 6, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative Joint Disease of the Left Knee, Status Post Surgeries in 2014 and 2015; and Obesity[.]

(Tr. at 18.) The ALJ found at step three that neither of these impairments, either individually or in combination, met or equaled a disability listing. (Tr. at 19.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform light work with the following additional limitations:

> [Plaintiff] requires the option to alternate sitting and standing at the workstation. [Plaintiff] can stand for 1 hour at a time; and he can stand and walk for a total of 4 hours in an 8-hour workday. He can sit for 6 hours in an 8-hour workday;

5

> and he can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can frequently balance; he can never climb ladders, ropes or scaffolds; and he can occasionally stoop, kneel, crouch, or crawl. Moreover, [Plaintiff] requires the use of a cane with his right hand when standing and walking.

(Tr. at 19.) Based on the RFC determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 22.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 23-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now contends that the ALJ erred when assessing Plaintiff's RFC by failing to perform a function-by-function analysis of his ability to walk, stand, or sit. (Pl.'s Br. [Doc. #12] at 4.) As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8P, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 12-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted). In many cases, "'[a]n ALJ

6

may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants.'" Sineath v. Colvin, 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016) (quoting Herren v. Colvin, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (collecting cases)).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 637 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637; see Monroe v. Colvin, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Here, the ALJ assigned "partial weight" to the conclusions of state agency medical consultant Edward Woods, M.D., who determined that Plaintiff could perform light work;

stand, sit, and walk for 6 hours in an 8-hour workday; occasionally push and pull with his left leg as a result of his partial left knee replacement; frequently climb ramps, stairs, ladders, and scaffolds; frequently stoop and balance; and occasionally kneel, crouch, and crawl. (Tr. at 22, 111-12.) The ALJ adopted many of Dr. Woods' findings. However, the ALJ also included several additional limitations, including that Plaintiff "requires the option to alternate sitting and standing at the workstation," that Plaintiff is limited to standing "for 1 hour at a time," and that he can only "stand and walk for a total of 4 hours in an 8-hour workday." (Tr. at 19.) The ALJ also found that Plaintiff could "never climb ladders, ropes or scaffolds" and that he "requires the use of a cane with his right hand when standing and walking." (Tr. at 19.) The ALJ based these limitations on "the totality of the medical evidence of record from 2014 through May of 2016" (Tr. at 22). Specifically, the ALJ reviewed in detail the medical records regarding Plaintiff's knee (Tr. at 20-21), and reviewed Plaintiff's testimony at the hearing (Tr. at 21.) The ALJ specifically acknowledged that Plaintiff "has a history of chronic and severe left knee pain. He has required 3 left knee surgeries, and [he] still has reported constant and severe pain, exacerbated by standing, walking, and even sitting. [Plaintiff] has testified that he can stand, walk, and sit for about 10-15 minutes before needing to change position, and he uses his cane most of the time." (Tr. at 21.) In setting the RFC, the ALJ determined that:

> [Plaintiff] does have significant functional limitations. The evidence shows a history of chronic left knee pain, exacerbated by physical activity, even after 3 surgeries. The last surgery in November of 2015 was a total knee replacement. However, despite the claimant's allegations, many of the examinations with orthopedists and pain specialists from late 2014 through May of 2016 showed good range of motion of the knee; generally adequate extension and flexion; a healed scar with only an occasional minor effusion, and no warmth or redness; and normal sensations, motor strengths, and basic stability of the knee. The examinations did show consistent tenderness to palpation of the knee, and mild to moderate pain with range of motion.

8

(Tr. at 21.) The ALJ also noted that despite Plaintiff's complaints, "none of [Plaintiff's] treating physicians reported any permanent limitations for him, or commented regarding his ability to work." (Tr. at 22.). Indeed, Plaintiff's physicians referred him to physical therapy and encouraged additional activity and exercise. (Tr. at 45, 609, 605, 547, 522-24, 500-01, 475) In addition, although Plaintiff was originally prescribed narcotics for his pain, the ALJ noted that Plaintiff's examining physicians later referred him to physical therapy and weaned him off the narcotics (Tr. at 20, 524, 540).[4]

> The ALJ further noted that Plaintiff:
>
> testified at the hearing that he was required to perform some work activities at the rescue mission where he lived, albeit with the use of his cane for support. These included stacking chairs, and mopping and sweeping.

(Tr. at 22.) In this regard, Plaintiff testified at the hearing that he had been staying at the rescue mission, that everyone has "different duties," and that he was "on light duty" and "[b]ecause of my knee, I have to sit down for a while." (Tr. at 48.) Plaintiff testified that he was:

> in the dining room, and I also help start prepare the meals. . . . I help in the kitchen part, as far as preparing meals. You know, I do something. I go sit down, you know, a while in the dining room. You know, we keep the tables cleaned, stack the chairs up. You know, sweep and mop the floors.

---

[4] The record reflects that Plaintiff's doctors were concerned with his use of narcotics, and referred him to a pain clinic. (Tr. at 559, 574, 580, 596, 612, 620, 644-47.) Due to Plaintiff's failure to comply with the pain clinic rules, he was no longer prescribed opiates. (Tr. at 574, 580.) At the hearing, Plaintiff testified that he was taking gabapentin but not opiates. (Tr. at 68.) He also testified to use of cocaine "over a year ago," and the medical record reflects that he was using cocaine in February 2016. (Tr. at 56, 656, 662.)

(Tr. at 49.) Plaintiff testified that he used his cane to help with "[t]he walking back and forth," and stated that he usually helps with these types of activities "10/15 minutes as a time." (Tr. at 50.)

Having considered the medical evidence, the opinion evidence, and Plaintiff's testimony, the ALJ concluded that Plaintiff:

> has significant limitations with prolonged walking and standing. He requires the ability to alternate sitting and standing in the workplace; he requires the use of a cane for walking and standing; and he can stand and walk for a total of 4 hours in an 8-hour workday. However, there is no consistent evidence in the record of any markedly severe problems with sitting, or with the basic use of his upper extremities for lifting and carrying light objects.

(Tr. at 22.) The ALJ therefore found Plaintiff capable of light work with the additional limitations noted in the RFC. Given the evidence presented and the detailed analysis in the decision, the ALJ sufficiently provided a function-by-function analysis with an "accurate and logical bridge" from the evidence to the RFC.

Unlike Mascio, Plaintiff has not pointed to any conflicting opinions or evidence, any opinions that were not weighed or considered, or any functions not sufficiently addressed by the ALJ. With respect to the conclusion that Plaintiff could stand and walk for a total of 4 hours in a workday, Plaintiff himself testified that he could stand a total of three or four hours in a day, spread out into smaller periods. (Tr. at 62.) Plaintiff also contends that the ALJ never made a finding regarding how long Plaintiff could walk or sit at one time. However, the questions to the Vocational Expert clearly reflect a limitation for standing or walking of not more than one hour at a time, with "no limitations on length of sitting, except for no more than one hour at a time," and for both standing and sitting the ability "for no more than two minutes to stand up and stretch or sit down and get off the feet before either resuming the

position or taking a new position in the opposite form." (Tr. at 71, 73). Plaintiff himself testified that he would spend most of the day sitting, but that if he is sitting for a length of time, he has to "stand up for a minute or so." (Tr. at 61, 63-64.) Ultimately, the Court concludes that the ALJ set out a sufficient function-by-function analysis, well supported by the evidence in the record, and remand is not required.[5]

Although not specifically raised as a separate claim, Plaintiff also contends that the ALJ did not adequately account for his pain complaints. However, the Court finds that the ALJ's decision evaluated Plaintiff's symptoms as provided in the regulatory guidance, and the ALJ explained in detail the reasons for discounting Plaintiff's subjective complaints of pain. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16–3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16–3p"); see also 20 C.F.R. § 404.1529.[6] In Craig v. Chater, the Fourth Circuit

---

[5] Plaintiff also contends that the difference between the RFC and Plaintiff's testimony is material because the VE testified that changing positions every 10 minutes would leave Plaintiff "off task too frequently to be able to perform competitive work." (Pl. Br. [Doc. #12] at 6.) However, the VE was asked "if the individual was standing there with the cane in the right hand for five to ten minutes an hour rather than the two minutes, would that affect their time off task?" and the VE responded, "If they're not doing their job it would. And it would exceed the allowable limitations of off task behavior and preclude all work, at that rate." (Tr. at 77-78). As noted, however, that testimony presumes Plaintiff was "standing there with the cane" off task for 5 to 10 minutes every hour, not that he was simply changing position every 10-15 minutes. Moreover, the testimony relied upon by the ALJ incorporated that ALJ's RFC determination, as set out above.

[6] Social Security Ruling 16-3p eliminated use of the term "credibility" in reference to symptom evaluation, effective March 28, 2016. The Social Security Administration has clarified that Social Security Administration adjudicators "will apply this ruling when we make determinations and decisions on or after March 28, 2016" and that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." Soc. Sec. Ruling

addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594–95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

---

16-3p, 2017 WL 510304, at *1, 13 n.27 (Oct. 25, 2017). Because the ALJ's decision in this case was issued after March 28, 2016, Social Security Ruling 16-3p applies to it.

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could cause some of the alleged pain symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 21.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical

13

evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16–3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16–3p.

In the present case, the ALJ adopted many of the subjective limitations suggested by Plaintiff, but discounted Plaintiff's claims to some extent, including with respect to the intensity of the pain and the inability to sit, stand, or walk more than 10 minutes. To the extent that the ALJ did not credit Plaintiff's claims, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence

14

and other evidence, and explained that determination in the decision. As set out above, the ALJ noted Plaintiff's history of chronic and severe knee pain, including three surgeries on his left knee. The ALJ noted, however, that "many of the examinations reflect good range of motion, adequate extension and flexion, a healed scar with only minor effusion, no warmth or redness, and normal sensations, motor strengths, and basic stability." (Tr. at 21.) The ALJ specifically considered the records cited by Plaintiff from 2014 and leading up to his total knee replacement in November 2015. (Tr. at 20.) In reviewing the medical evidence, the ALJ also set out specifically the results of Plaintiff's 6-month orthopedic follow-up on May 9, 2016, which is the last record prior to the hearing in September 2016. As noted by the ALJ, that record reflects that Plaintiff:

> reported improved pain symptoms, but he still had pain, worse with physical activity. The examination showed a mild left knee effusion that was not warm or reddened; range of motion was from 5-120 degrees; the knee was stable to varus and valgus stress and extension, mid flexion, and deep flexion; the calf was soft and compressible to palpation; range of motion of the ankle was intact and pulses and sensation were 2+ to light touch throughout. There was some discomfort to palpation at the anterior medial joint line. The claimant had minimal pain on hip range of motion but mild to moderate pain on knee range of motion.

(Tr. at 21, 619-20.)[7] The ALJ ultimately concluded that despite Plaintiff's allegations, the record reflected good range of motion, adequate extension and flexion, normal sensation and strength, and basic stability of the knee. (Tr. at 21.) In undertaking the evaluation of Plaintiff's symptoms, the ALJ also considered the lack of any permanent limitations reported by

---

[7] Other medical records from around that time reflect a normal gait in February 2016 with tenderness in the left knee when walking (Tr. at 653, 658), "no significant pain with range of motion except with deep flexion," (Tr. at 611), and "[r]adiographs show[ing] well-aligned components, with no evidence of loosening, fracture, or complications" (Tr. at 612), and in March 2016, normal strength and range of motion and "walking well" (Tr. at 613-15.)

Plaintiff's treating physicians and the testimony regarding Plaintiff's duties at the rescue mission, as set out above. Thus, the decision contains sufficient analysis to understand the ALJ's reasoning and conclusions with regard to the evaluation of Plaintiff's complaints of pain, and the ALJ's conclusions are supported by substantial evidence. Thus, the ALJ's evaluation of Plaintiff's symptoms does not require remand in this case.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 29th day of August, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge